UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-3649(DSD/JJG)

Yvonne Clark, on her own
behalf and on behalf of her
minor daughter, T.M.J.,

       Plaintiffs,

v.                                                    **ORDER**

Officer Nick Pielert, Sgt.
Douglas Brunner, Officer
Frank Mazzuca and City
of New Hope,

       Defendants.


Jordan S. Kushner, Esq., 431 South Seventh Street, Suite
2446, Minneapolis, MN 55415, counsel for plaintiff.

Jason M. Hiveley, Esq., Jon K. Iverson, Esq. and Iverson
Reuvers, LLC, 9321 Ensign Avenue South, Bloomington, MN
55438, counsel for defendants.


This matter is before the court on defendants' motion for
summary judgment. Based on a review of the file, record and
proceedings herein, and for the reasons stated, defendants' motion
is granted in part and denied in part.


**BACKGROUND**

This dispute arises out of defendants City of New Hope police
officers Nick Pielert ("Pielert"), Frank Mazzuca ("Mazzuca") and
sergeant Douglas Brunner's ("Brunner") (collectively "the

officers") response to a 911 hang-up call made from plaintiff Yvonne Clark's ("Clark") apartment in New Hope, Minnesota on April 26, 2007.[1]  After receiving the call around midnight, the 911 dispatcher unsuccessfully attempted to contact the caller.  Soon thereafter, Pielert and Brunner arrived at Clark's apartment and heard voices coming from inside.  Pielert knocked on the door to the apartment several times.  Clark eventually opened the door with the chain still attached.  Pielert told Clark of the 911 hang-up call and indicated that he and Brunner wanted to know if there was a problem.  Clark responded that no one had called 911 and that everything was fine.  Pielert then asked permission to enter the apartment, at which time Clark's three-year-old daughter, T.M.J., stuck her arm through the door and Clark told her to leave.  Clark then refused Pielert's request and closed the door.

After further knocking, Clark opened the door again with the chain still attached.  Pielert blocked the doorway with his foot and asked if there were other people in the apartment.  Clark stated that there were not.  Brunner then stepped forward and asked Clark for identification.  Clark refused and Brunner threatened to break the door down, arrest Clark for obstructing justice and send Clark's child away.  Clark stepped back from the door and indicated that Brunner and Mazzuca would have to break the door down to

---

[1] For purposes of this motion, the court recites the facts in a light most favorable to plaintiffs.  See Gosney v. Reliable Life Ins. Co., 293 F.3d 1052, 1053 (8th Cir. 2002).

2

enter.   In response, Brunner forced entry to the apartment by hitting the door twice with his shoulder.

After entering the apartment, Brunner and Pielert immediately tackled Clark onto the couch.  Brunner handcuffed Clark behind her back, lifted her off the couch and directed her into the hallway. Clark began shouting profanities at Brunner, and Brunner forced her against the exterior wall adjacent to her apartment door and tightened the handcuffs.

While Brunner restrained Clark, Pielert saw Clark's boyfriend, Franklin Jones ("Jones"), walk down the hallway toward the living room.  Pielert instructed Jones to stop, sit on the couch and provide identification.  Jones complied.  Pielert then noticed Tyrone Wyer ("Wyer") sitting at the kitchen table and commanded him to place his hands on the table.  Wyer complied.  After Brunner escorted Clark out of the apartment, Pielert questioned Jones and Wyer about the 911 call and pat-searched them for weapons.  Pielert then looked around the rest of the apartment and opened a kitchen cabinet and dresser drawers in the bedroom in search of Clark's purse and identification.  (Wyer Dep. at 17-19.)

As Brunner and Clark exited the apartment building, Clark continued to shout profanities.  Once outside, Brunner shoved Clark into the concrete exterior wall of the apartment building and again tightened the handcuffs.  Brunner then moved Clark to the rear of his police car and attempted to search her.  Clark moved her leg

away from Brunner and said "you can't search me." (Pl.'s Dep. at 58.) Brunner responded by slamming Clark onto the car. At this time, Mazzuca arrived and pinned Clark's head to the car by placing his elbow on her neck. Mazzuca said to Clark "move again, I'm going to tase your ass," and called her "a piece of shit." (Pl.'s Dep. at 58; Mazzuca Dep. at 19.)

While Clark was pinned to the car, Brunner conducted a pat search. Afterwards, Brunner and Mazzuca threw Clark headfirst into the back of the squad car against the glass divider separating the backseat. As a result of Brunner and Mazzuca's alleged conduct, Clark suffered marks on her wrists from the handcuffs, a bruise on the back of her neck, a minor bruise on her face and a knot in her head.[2]

Once Clark was in the squad car she heard Brunner say to Mazzuca, "we asked her if she wanted to do it the ghetto way." (Pl.'s Dep. at 63-64; Mazzuca Dep. at 21.) Brunner brought Clark to the New Hope Police Department and charged her with misdemeanors for disorderly conduct and obstructing legal process. Pielert and Brunner assisted in fingerprinting and photographing Clark at the police station. The charges against Clark were later dismissed.

On July 17, 2007, Clark brought a fourteen-count complaint in state court for herself and T.M.J. alleging violations of 42 U.S.C.

---

[2] Clark testified that she suffered no injury when Pielert and Brunner tackled her onto the couch. (Clark Dep. at 53.)

4

§§ 1981 and 1983, and various state law claims against Pielert,

Brunner, Mazzuca and New Hope.[3]  Defendants removed to this court

on August 8, 2007, and moved for summary judgment on August 1,

2008.

### DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides

that summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law."  See Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).  A fact is material only when its

resolution affects the outcome of the case.  Anderson v. Liberty

---

[3] The complaint asserts several claims on behalf of T.M.J.
Plaintiffs' memorandum in opposition to defendants' motion for
summary judgment, however, expressly references T.M.J. only in her
Minnesota Human Rights Act claim.  Minn. Stat. § 363A.12.
Nevertheless, plaintiffs' counsel indicated at oral argument his
desire to pursue all asserted claims.  Despite counsel's
representations, the court determines that all of T.M.J.'s
unbriefed claims have been waived, and those claims are dismissed.
See Graham v. Rosemount, Inc., 40 F. Supp. 2d 1093, 1101 (D. Minn.
1999) (failure to respond to defendants' arguments resulted in
waiver of claims); cf. Berryhill v. Schiriro, 137 F.3d 1073, 1075
n.2 (8th Cir. 1998) (issue not raised or briefed generally waived).

<u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. <u>See</u> <u>id.</u> at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. <u>See</u> <u>id.</u> at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. <u>See</u> <u>Celotex</u>, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of her claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. <u>Id.</u> at 322-23.

## II.  Section 1983 Claims

Section 1983 of Title 42 of the United States Code provides in relevant part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Section 1983 is "'not itself a source of substantive rights'" but merely affords "'a method for vindicating federal rights elsewhere conferred.'" <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a

court considering a § 1983 claim must first "identify the specific constitutional right allegedly infringed." Id. at 271 (citing Graham v. Connor, 490 U.S. 386, 394 (1989)). Moreover, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006) (quotation omitted).

### A. Individual Liability

Clark argues that the officers violated the Fourth Amendment by illegally entering her home, arresting her without probable cause and using excessive force, and that they discriminated against her based on race in violation of the Fourteenth Amendment.[4] The officers maintain that they are entitled to qualified immunity.

Qualified immunity protects government agents who perform discretionary functions from civil liability, so long as the challenged actions are objectively reasonable in light of clearly established legal principles. See Anderson v. Creighton, 483 U.S.

---

[4] Clark asserts that the individual defendants engaged in a conspiracy to violate her constitutional rights. However, no facts support such an agreement. See Reasonover v. St. Louis County, 447 F.3d 569, 582 (8th Cir. 2006) (joint action by officers does not alone support unlawful conspiracy). Therefore, summary judgment is appropriate to the extent Clark seeks conspiratorial liability. In addition, count five of Clark's complaint alleges that the officers retaliated against her for asserting her constitutional rights. See, e.g., Naucke v. City of Park Hills, 284 F.3d 923, 927-28 (8th Cir. 2002) (elements of § 1983 retaliation claim). The court does not consider this claim, however, because it was not addressed by the parties.

635, 638 (1987).  Qualified immunity is a question of law that the court determines as early as possible so as to shield appropriate officials from suit.  See Gainor v. Rogers, 973 F.2d 1379, 1382-83 (8th Cir. 1992).  In evaluating a claim of qualified immunity, the initial inquiry is whether, "the facts alleged show the officer's conduct violated a constitutional right."  Saucier v. Katz, 533 U.S. 194, 201 (2001); Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005).  If the facts alleged by a plaintiff do not establish a violation of a constitutional right by an officer, no further inquiry is necessary and qualified immunity is warranted.  Saucier, 533 U.S. at 201.

However, if the facts do allege a constitutional violation, the court must determine whether the right alleged to be violated was clearly established so that a reasonable officer would understand that the conduct he engaged in was unlawful.  See id.; Wilson v. Layne, 526 U.S. 603, 614-15 (1999).  In other words, "the unlawfulness must be apparent" in light of pre-existing law. Anderson, 483 U.S. at 640.  This second inquiry is fact intensive and "undertaken in light of the specific context of the case." Saucier, 533 U.S. at 201.  The court applies the doctrine of qualified immunity in a manner that "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'"  Walker v. City of Pine Bluff, 414

F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

### 1.   Fourth Amendment

#### a.   Illegal Entry

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A search and seizure inside a home without a warrant supported by probable cause is presumptively unreasonable. Payton v. New York, 445 U.S. 573, 586 (1980). Only certain carefully delineated exceptions overcome this presumption. See United States v. Marshall, 986 F.2d 1171, 1173 (8th Cir. 1993) (citing Mincey v. Arizona, 437 U.S. 385, 390 (1978)). Brunner and Pielert argue that their warrantless entry of Clark's apartment was justified because they were acting as community caretakers and exigent circumstances existed.[5]

In United States v. Quezada, the court identified "a difference between the standards that apply when an officer makes a warrantless entry when acting as a so-called community caretaker and when he or she makes a warrantless entry to investigate a crime." 448 F.3d 1005, 1007 (8th Cir. 2006). According to the court, an officer acting "in ways totally divorced from the

---

[5] Mazzuca never entered Clark's apartment and was not present when Pielert and Brunner entered. Therefore, Mazzuca is entitled to qualified immunity on the illegal entry claim.

detection, investigation, or acquisition of evidence relating to the violation of criminal law ... may enter a residence without a warrant [upon] a reasonable belief that an emergency exists requiring his or her attention." Id. (citing Mincey, 437 U.S. at 392-93; Cady v. Dombrowski, 413 U.S. 433, 441 (1973)).  On the other hand, a warrantless entry by an officer acting as an investigator "must be justified by probable cause to believe that a crime has been or is being committed and the existence of what are called exigent circumstances." Id.  One exigent circumstance is the reasonably perceived "risk of danger to the police or others." Id. (citing Minnesota v. Olson, 495 U.S. 91, 100 (1990)).

The Supreme Court, however, has since clarified that the subjective intent of an officer is irrelevant when responding to an emergency.  See Brigham City v. Stuart, 547 U.S. 398, 404-05 (2006); Ziegler v. Aukerman, 512 F.3d 777, 785 (6th Cir. 2008). Instead, "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" Stuart, 547 U.S. at 404 (quoting Scott v. United States, 436 U.S. 128, 138 (1978)); see also United States v. Valencia, 499 F.3d 813, 815-16 (8th Cir. 2007); United States v. Uscanga-Ramirez, 475 F.3d 1024, 1028 (8th Cir. 2007).  Thus, a warrantless search does not violate the Fourth Amendment if (1) the totality of the circumstances support an objectively reasonable belief that

immediate action is needed to protect the officers or others from serious harm, and (2) the manner and scope of the search is reasonable. See Stuart, 547 U.S. at 403-06; see also United States v. Snipe, 515 F.3d 947, 952 (9th Cir. 2008); United States v. Najar, 451 F.3d 710, 718 (10th Cir. 2006). A reasonable belief "is a less exacting standard than probable cause." Quezada, 448 F.3d at 1007 (citing Maryland v. Buie, 494 U.S. 325, 336-37 (1990)).

In this case, Pielert and Brunner responded to a 911 hang-up call where the dispatcher could not reach the caller, reasonably raising the possibility of an emergency. Upon arrival, the officers heard several voices inside and their initial knocks went unheeded. After Clark opened the door, she denied making a 911 call, lied about the presence of others within the apartment and refused to provide identification. Based on these facts, Pielert and Brunner could have reasonably believed that immediate action was necessary to protect someone inside from harm. See Najar, 451 F.3d at 712-20 (finding reasonable entry based on similar facts). In addition, Brunner's manner of entry was reasonable because Clark's refusal to unlatch the door required him to force entry by breaking the latch. Therefore, the court determines that Pielert and Brunner lawfully entered Clark's apartment and summary judgment on this claim is warranted.[6]

---

[6] Clark does not argue that the scope of Pielert's search was unreasonable.

###### b.    Illegal Arrest

###### i.    Arguable Probable Cause

A warrantless arrest violates the Fourth Amendment unless it is supported by probable cause. Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008). "Because the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim is not probable cause in fact but arguable probable cause." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (citation and quotation omitted). "Probable cause exists when the totality of the circumstances shows that a prudent person would believe that the arrestee has committed a crime." Amrine, 522 F.3d at 832. In assessing probable cause, a court looks at "the objective facts available to the officers at the time of the arrest," Sheets v. Butera, 389 F.3d 772, 777 (8th Cir. 2004), and gives the officers "substantial latitude in interpreting and drawing inferences from factual circumstances," Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999) (citation and quotation omitted). The officers contend there was arguable probable cause to arrest Clark for obstructing legal process because she lied about the presence of others in the apartment, refused to provide

identification and refused Pielert and Brunner's entry into the apartment.[7]

Minnesota Statutes § 609.50 prohibits intentionally "(1) obstruct[ing], hinder[ing], or prevent[ing] the lawful execution of any legal process, civil or criminal, or apprehension of another on a charge or conviction of a criminal offense; [and] (2) obstruct[ing], resist[ing], or interfer[ing] with a peace officer while the officer is engaged in the performance of official duties." Violation of this statute requires the accused to intentionally and physically obstruct or interfere with an officer's performance of his official duties. State v. Tomlin, 622 N.W.2d 546, 548-49 (Minn. 2001) (citing State v. Krawsky, 426 N.W.2d 875, 877-78 (Minn. 1988)). An individual does not violate the statute by directing "ordinary verbal criticism" at an officer, Krawsky, 426 N.W.2d at 878, lying or omitting information so long as the lie does not physically prevent police from performing their duties, Tomlin, 622 N.W.2d at 549, or refusing to provide identification when there is no reasonable suspicion that the individual is engaged in criminal activity, Gainor, 973 F.2d at 1386.

---

[7] Although Clark was also charged with disorderly conduct, defendants do not argue that arguable probable cause existed for that offense.

In this case, Clark's lie about others in the apartment did not physically prevent the officers from performing their duties. Moreover, the officers do not argue that they had reasonable suspicion to believe Clark was engaged in criminal activities at the time she refused to provide identification. Therefore, the issue is whether Clark's refusal to remove the chain to her door establishes arguable probable cause that she obstructed the officers' response to the 911 call.

As discussed above, Pielert and Brunner had a right to enter Clark's apartment because of a reasonable belief that an emergency existed. Clark, however, had no affirmative duty to assist their entry, and she cannot be criminally punished for refusing to take the chain off the door. See District of Columbia v. Little, 339 U.S. 1, 4-7 (1950) (interpreting statute to avoid constitutional issues and finding no affirmative duty to unlock door for health inspection even if inspector had right to enter); United States v. Prescott, 581 F.2d 1343, 1350-51 (9th Cir. 1978) (passive refusal to permit warrantless search cannot be a crime). Moreover, Clark's actions did not physically prevent the officers from investigating the 911 call. Instead, Brunner easily forced entry after Clark moved away from the door and Clark did not actively obstruct Pielert and Brunner once they entered the apartment. Therefore, the court determines that there was no arguable probable cause to arrest Clark for obstructing legal process.

14

### ii.  Causation

Pielert and Brunner observed the actions leading to Clark's arrest, physically participated in the arrest and assisted in processing her at the police station.  Moreover, Brunner decided the crimes with which to charge Clark.   Therefore, the court determines that Pielert and Brunner caused Clark's arrest. Mazzuca, on the other hand, arrived at the scene only after Brunner handcuffed Clark and had her outside.  Mazzuca did not observe the events allegedly establishing probable cause to arrest Clark, did not make the decision to arrest and charge Clark and did not transport her to the police station.   (Mazzuca Dep. at 29.) Therefore, the court determines that Mazzuca did not cause Clark's arrest by merely assisting Brunner.  See Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001) ("[T]he direct physical participation of the defendant in the constitutional violation is not alone a sufficient basis for holding the defendant liable if the defendant had no awareness or notice of the facts that rendered the action illegal."); cf. Loria v. Gorman, 306 F.3d 1271, 1288 (2d Cir. 2002) ("Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful.").   Accordingly, the court denies Pielert and Brunner's motion for summary judgment on this claim, and grants summary judgment in favor of Mazzuca.

### c.   Excessive Force

An officer violates the Fourth Amendment when he uses excessive force in the apprehension or detention of a free citizen. See Graham, 490 U.S. at 395.  Excessive force is that which is "'excessive under objective standards of reasonableness.'"  Wilson v. City of Des Moines, 293 F.3d 447, 450 (8th Cir. 2002) (quoting Saucier, 533 U.S. at 201-02).  When evaluating an officer's use of force, a court must pay "careful attention to the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.  To establish excessive force, a plaintiff must show actual injury, which is more than "de minimus," Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003), but less than "significant," Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995). More than minor injury resulting from the application of handcuffs is required to support an excessive force claim.  Haniq v. Lee, 415 F.3d 822, 824 (8th Cir. 2005) (citing Crumley, 324 F.3d at 1008).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).  The

"calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Id. at 396-97; see also Nelson v. County of Wright, 162 F.3d 986, 990-91 (8th Cir. 1998).   However, it is well established that "no greater force should be used in making an arrest than was reasonable under the circumstances." Nelson, 162 F.3d at 990.

In this case, Clark was arrested for two minor, non-violent misdemeanors and few facts suggest that she posed an immediate threat to the officers' safety.   Moreover, Clark alleges that she resisted arrest only by moving her leg away from Brunner when he attempted to pat search her.   According to Clark, however, Brunner pushed her against two walls, slammed her head onto the back of his police car and threw her headfirst into the glass divider separating the backseat of his car.   Similarly, Mazzuca allegedly pinned Clark's head to the police car and helped Brunner throw her into the backseat.   As a result of this conduct, Clark allegedly suffered injuries to her wrists, neck, head and face.   Taking all evidence and inferences in Clark's favor, the court determines that Brunner and Mazzuca used excessive force against Clark.   In contrast, Clark testified that Pielert tackled her onto the couch but that she suffered no injury as a result.   (Clark Dep. at 50,

53.)   Pielert had no additional physical contact with Clark.
Therefore, the undisputed facts show that Pielert did not use
excessive force and Pielert is entitled to qualified immunity on
this claim.

The court further determines that the unreasonableness of the
alleged use of force by Brunner and Mazzuca was apparent.   The
facts in <u>Gainor</u> are particularly germane.   In that case, Gainor was
arrested for two misdemeanors.   <u>Gainor</u>, 973 F.2d at 1382.   He
alleged that during his arrest, "the officers, without provocation,
threw him to the ground, twisted his arms, and kneeled on his back
and legs," causing facial abrasions and injuries to his wrist and
knee.   <u>Id.</u>   The court affirmed the district court's denial of
qualified immunity on Gainor's excessive force claim, noting that
his "alleged misconduct was neither violent nor serious," little
evidence indicated that he posed a physical threat to anyone and a
factual dispute existed as to whether he was actively resisting
arrest.   <u>Id.</u> at 1388.   The same considerations apply to this case.
Accordingly, qualified immunity is not warranted, and the court
denies summary judgment as to Brunner and Mazzuca on this claim.

### 2.   Equal Protection

Clark contends that the officers' actions were racially
motivated based on Brunner's "ghetto way" comment.   A Fourteenth
Amendment equal protection claim under 42 U.S.C. §§ 1981 and 1983
requires a plaintiff to prove that an officer exercised his

discretion to enforce the law based on a plaintiff's race.  Johnson
v. Crooks, 326 F.3d 995, 1000 (8th Cir. 2003) (citing United States
v. Armstrong, 517 U.S. 456, 465 (1996)).   Evidence of such
discretion requires proof of discriminatory effect and purpose.
Id.  To show that an arrest was racially-motivated, a "plaintiff
must normally prove that similarly situated individuals were not
... arrested."  Id.  However, a plaintiff can also establish a
prima facie equal protection claim with direct evidence of racial
discrimination.  United States v. Frazier, 408 F.3d 1102, 1108 (8th
Cir. 2005) (citing Johnson, 326 F.3d at 1000).

Clark has provided no evidence of similarly situated
individuals.  The word "ghetto," however, is a racially-charged
word and Brunner's use of that word in reference to Clark raises a
factual issue as to whether he treated Clark differently based on
her race.  Therefore, Brunner is not entitled to qualified immunity
on this claim.  No evidence, however, suggests that Pielert or
Mazzuca treated Clark differently because of her race, and they are
entitled to qualified immunity.  Accordingly, summary judgment on
this claim is denied as to Brunner and granted as to Pielert and
Mazzuca.

**B.   Municipal Liability**

Clark argues that New Hope's failure to adequately train its
officers caused the deprivation of her Fourth and Fourteenth
Amendment rights.  Municipalities are not vicariously liable under

§ 1983 for an employee's unconstitutional acts. <u>Szballa v. City of Brooklyn Park</u>, 486 F.3d 385, 389 (8th Cir. 2007) (en banc) (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978)). Rather, municipal liability exists only if a plaintiff can establish that either a municipal policy or custom is the moving force behind the constitutional violation. <u>Wedemeier v. City of Ballwin</u>, 931 F.2d 24, 26 (8th Cir. 1991). A municipality's inadequate training of employees can serve as the basis of § 1983 liability only when a plaintiff shows that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>City of Canton v. Harris</u>, 489 U.S. 378, 388-89 (1989). To establish deliberate indifference, a plaintiff must prove that the municipality "'had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.'" <u>Jennings v. Wentzville R-IV Sch. Dist.</u>, 397 F.3d 1118, 1122 (8th Cir. 2005) (quoting <u>Larson v. Miller</u>, 76 F.3d 1446, 1454 (8th Cir. 1996) (en banc)). Notice is implied if "the failure to train is so likely to result in a constitutional violation that the need for training is patently obvious." <u>Id.</u>

The only evidence supporting this claim is Pielert's deposition testimony that New Hope did not train him regarding constitutional rights. (Pielert Dep. at 10.) However, "the fact that 'a particular [employee] may be unsatisfactorily trained will not alone suffice to fasten liability on the [governmental

entity.]'"   <u>Thelma D. v. Bd. of Educ.</u>, 934 F.2d 929, 934-35 (8th

Cir. 1991) (quoting <u>Harris</u>, 489 U.S. at 390-91).   Therefore,

Pielert's testimony does not create a genuine issue of material

fact, and summary judgment in favor of New Hope is warranted.

## III.   State Law Claims

Clark alleges that defendants violated the Minnesota Human

Rights Act ("MHRA") and committed assault, battery, false

imprisonment, trespass and negligence.[8] Defendants argue that they

are entitled to official immunity or, alternatively, that Clark has

not established a prima facie case for any of the state law claims.

### A.   Official Immunity

"The doctrine of official immunity protects public officials

from liability for discretionary actions taken in the course of

their official duties."   <u>Bailey v. City of St. Paul</u>, 678 N.W.2d

697, 700 (Minn. Ct. App. 2004) (citing <u>Janklow v. Minn. Bd. of</u>

<u>Exam'rs for Nursing Home Adm'rs</u>, 552 N.W.2d 711, 716 (Minn. 1996)).

Such immunity exists "'to protect public officials from the fear of

personal liability that might deter independent action and impair

---

[8] Clark's complaint alleges these claims against "defendants,"
which the court construes as an assertion of vicarious liability
against New Hope based on the actions of its officers.   <u>See</u> <u>Hawkins</u>
<u>v. City of Farmington</u>, 189 F.3d 695, 706 (8th Cir. 1999)
(construing complaint broadly to assert vicarious liability against
city); <u>see also</u> <u>Hagen v. Burmeister & Assocs., Inc.</u>, 633 N.W.2d
497, 504 (Minn. 2001) (employer vicariously liable for employee's
intentional torts if tort occurs within work-related limits and is
related to employee's duties); <u>Schneider v. Buckman</u>, 433 N.W.2d 98,
101 (Minn. 1988) (employer vicariously liable for employee's torts
committed within scope of employment).   Accordingly, the following
analysis applies equally to New Hope.

effective performance of their duties.'"   Id. (quoting S.L.D. v. Kranz, 498 N.W.2d 47, 50 (Minn. Ct. App. 1993)).  Official immunity analysis proceeds in two steps.  Id. at 701.  First, a court asks whether the conduct challenged by the plaintiff is discretionary or ministerial.  See id.  Second, if the conduct is discretionary, a court asks whether the officers' conduct was malicious or willful. See id.

Official immunity protects discretionary acts, which are acts undertaken in the exercise of individual judgment.  Id.  However, official immunity does not protect ministerial acts, which are acts undertaken pursuant to a specific duty arising from fixed and designated facts.  Id.  "Generally, police officers are classified as discretionary officers entitled to [official] immunity." Johnson v. Morris, 453 N.W.2d 31, 42 (Minn. 1990) (citing Elwood v. Rice County, 423 N.W.2d. 671, 678 (Minn. 1988)).  Here, the officers' conduct involved the exercise of individual judgment as to whether to enter Clark's apartment, whether to arrest Clark and the amount of force to use in arresting Clark.  Therefore, the officers are protected absent a showing of willfulness or malice.

A public official commits willful or malicious conduct if he intentionally commits an act that he has reason to believe is prohibited.  Rico v. State, 472 N.W.2d 100, 106-07 (Minn. 1991). A plaintiff cannot rely on "bare allegations of malice" to overcome a defense based on official immunity.  Harlow v. Fitzgerald, 457

U.S. 800, 817 (1982).   Instead, she must present specific facts
evidencing bad faith.  Reuter v. City of New Hope, 449 N.W.2d 745,
751 (Minn. Ct. App. 1990).   Evidence that an officer intentionally
acted in a manner later determined to be unlawful does not alone
establish malice.  Greiner v. City of Champlin, 27 F.3d 1346, 1355
(8th Cir. 1994) (citing Rico, 472 N.W.2d at 106-07).

The only evidence of Pielert's bad faith is his participation
in Clark's arrest.   Wyer, however, testified that Pielert was
"calm" during the incident and that "he wasn't rude." (Wyer Dep.
at 24.)   Moreover, after Clark was taken to the police station,
processed and released, Pielert offered her a ride home, which she
declined.   (Pielert Dep. at 51-52; Clark Dep. at 66-67.)   This
evidence belies any alleged bad faith by Pielert, and he is
entitled to official immunity on Clark's state law claims.
Brunner's alleged use of force and "ghetto way" comment, however,
create a fact question as to whether he acted willfully or
maliciously.   Similarly, Mazzuca's alleged use of force and
reference to Clark as a "piece of shit" creates a fact issue as to
whether he acted in bad faith.   Accordingly, Brunner and Mazzuca
are not entitled to official immunity.

**B.   Substantive Claims**

**1.   Minnesota Human Rights Act**

Clark and T.M.J. argue that Brunner and Mazzuca discriminated
against them in violation of the MHRA.   The MHRA prohibits

23

discrimination "against any person in the access to, admission to, full utilization of or benefit from any public service because of race." Minn. Stat. § 363A.12, subdiv. 1. This includes discriminatory conduct by law enforcement officers. See State ex rel. Beaulieu v. City of Mounds View, 518 N.W.2d 567, 570 (Minn. 1994).

As discussed above, Brunner's alleged "ghetto way" comment creates a fact issue as to whether he discriminated against Clark with respect to race. Nothing, however, suggests that Mazzuca's actions were discriminatory. Therefore, the court denies Brunner's motion for summary judgment as to Clark on this claim and grants Mazzuca's motion. Moreover, no evidence supports T.M.J.'s claim of discrimination, and summary judgment is warranted.

### 2. Assault & Battery

"An assault is an unlawful threat to do bodily harm to another with present ability to carry the threat into effect." Dahlin v. Fraser, 288 N.W. 851, 852 (Minn. 1939). However, the threatened use of force by a peace officer to effect an arrest is lawful if the threatened force is reasonable. Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990) (citing Minn. Stat. § 609.06(1)(a)). Therefore, to establish an assault claim against an arresting officer, a plaintiff must establish that the officer threatened to use unreasonable force - that is, more force than was necessary under the circumstances. Johnson, 453 N.W.2d at 41 (citing Minn.

24

Stat. § 629.32). Battery is the "intentional, unpermitted offensive contact" with the person of another. Paradise v. City of Minneapolis, 297 N.W.2d 152, 155 (Minn. 1980). When a police officer makes an arrest, a battery claim is actionable only if the officer used "excessive force." Johnson, 453 N.W.2d at 40-41.

For the reasons noted earlier, a fact issue remains as to whether Brunner and Mazzuca used or threatened to use excessive force in arresting Clark. Therefore, summary judgment on this claim is not warranted.

### 3. False Imprisonment

A claim for false imprisonment requires a showing of "(1) words or acts intended to confine, (2) actual confinement, and (3) awareness by the plaintiff that [s]he is confined." Blaz v. Molin Concrete Prods. Co., 244 N.W.2d 277, 279 (Minn. 1976) (citations omitted). A warrantless arrest made with probable cause does not constitute false imprisonment. Johnson, 453 N.W.2d at 40.

In this case, Brunner arrested Clark without arguable probable cause, and summary judgment in his favor is not warranted. See Bahr v. County of Martin, 771 F. Supp. 970, 979 (D. Minn. 1991). However, as indicated earlier, Mazzuca did not cause Clark's arrest, and he is entitled to summary judgment on this claim.

### 4. Trespass

Trespass is the unauthorized entry on another's land without consent. Special Force Ministries v. WCCO TV, 584 N.W.2d 789, 792

(Minn. 1998).   "A permitted entrant may become a trespasser by exceeding the scope of consent."   Id. (citation omitted).   Here, Mazzuca never entered Clark's apartment and Brunner had the right to enter.   Therefore, summary judgment is warranted on this claim.

### 5.   Negligence

Negligence requires proof of a duty, breach of that duty, injury proximately caused by the breach and damages.   Meyer v. Lindala, 675 N.W.2d 635, 639 (Minn. Ct. App. 2004) (citing Schweich v. Ziegler, Inc., 463 N.W.2d 722, 729 (Minn. 1990)).   Based on the court's determination that Clark was arrested without probable cause and that a fact issue remains as to the level of force used against her, the court also determines that summary judgment on this claim is not warranted as to Brunner and Mazzuca.


### CONCLUSION

Accordingly, based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment:

1.   On all claims asserted on behalf of T.M.J. is granted.

2.   On the § 1983 conspiracy claim is granted.

3.   On the illegal entry claim is granted.

4.   On the illegal arrest claim is denied as to Pielert and Brunner, and granted as to Mazzuca.

5.   On the excessive force claim is granted as to Pielert and denied as to Brunner and Mazzuca.

6.   On the equal protection claim is granted as to Pielert and Mazzuca, and denied as to Brunner.

7.   On the § 1983 municipal liability claim against New Hope is granted.

8.   On Clark's Minnesota Human Rights Act claim is granted as to Pielert and Mazzuca, and denied as to Brunner and New Hope.

9.   On the assault and battery claims is granted as to Pielert and denied as to Brunner, Mazzuca and New Hope.

10.   On the false imprisonment claim is granted as to Pielert and Mazzuca, and denied as to Brunner and New Hope.

11.   On the trespass claim is granted as to all defendants.

12.   On the negligence claim is granted as to Pielert and denied as to Brunner, Mazzuca and New Hope.

Dated:  January 5, 2009

s/David S. Doty
David S. Doty, Judge
United States District Court